Erwin PROTTER, Fast Food Franchise Inc., Fast Food Franchise of Broadway, Inc., and Fast Food Franchise of Steinway, Inc., Plaintiffs,

v.

NATHAN'S FAMOUS SYSTEMS, INC., Howard M. Lorber, Wayne Norbitz, Raymond Dioguardi and Carl Paley, Defendants.

No. 95 CV 1408.

United States District Court, E.D. New York.

Oct. 21, 1995.

Gerst & Levin by Barry Levin, New York City, for Plaintiffs.

Arkin Schaffer & Supino by Stanley S. Arkin, Hyman L. Schaffer, Harry B. Feder, New York City, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This case arises out of the sale of three Nathan's Famous restaurant franchises in the New York metropolitan area. Under the sale agreements the individual plaintiff, Erwin Protter ("Protter"), as president of the corporate plaintiffs, Fast Food Franchise, Inc. ("Fast Food"), Fast Food Franchise of Broadway, Inc. ("Broadway"), and Fast Food Franchise of Steinway, Inc. ("Steinway"), (the "corporate plaintiffs," collectively referred to with Protter as "Protter" or the "plaintiff") purchased three Nathan's Famous restaurant franchises from the defendant, Nathan's Famous Systems, Inc. The restaurants subsequently proved unprofitable and Protter filed this lawsuit seeking $13,-088,359 in damages, claiming that he was induced to purchase the franchises as the result of a series of fraudulent misrepresentations made by the defendants, Howard M. Lorber ("Lorber"), Wayne Norbitz ("Norbitz"), Raymond Dioguardi ("Dioguardi") and Carl Paley ("Paley") (collectively the "individual defendants," with Nathan's, the "defendants" or "Nathan's") made in their capacities as officers on Nathan's behalf. The Complaint alleges causes of action based on the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, the New York Franchise Sales Act ("NYFSA"), N.Y.Gen.Bus.L. §§ 680–95, the Federal Trade Commission Act ("FTCA") 15 U.S.C. § 57a, common law fraud and negligent misrepresentation. However, the plaintiff subsequently withdrew his negligent misrepresentation and FTCA claims. Accordingly, the only basis for federal jurisdiction is the RICO claims.

The defendants now move this Court for an Order dismissing the Complaint in its

entirety pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) for failure to state a claim upon which relief can be granted. The plaintiff responds by arguing that he has sufficiently stated his claims, or alternatively, by cross moving for leave to amend the Complaint should the motion to dismiss be granted.

*Background*

The following facts are taken entirely from the Complaint. Erwin Protter is a New York resident domiciled in Queens, New York. Protter is the president of the three corporate plaintiffs which are all New York corporations with their principal offices in Queens, New York. Nathan's is a Delaware corporation with its principal office located in Westbury, New York. Defendant, Howard Lorber, is the Chairman of the Board of Directors and a Director of Nathan's; Wayne Norbitz is President, Director and Chief Operating Officer of Nathan's; Raymond Dioguardi is the Vice President and Chief Financial Officer; and Charles Paley is the Vice President of Franchise Development.

Nathan's is the franchisor of Nathan's Famous restaurant chain which is primarily known for its hot dogs, french fried potatoes and other assorted fast foods. Some time after a public offering made by Nathan's in February 1993, which raised approximately $15 million, the plaintiff entered into negotiations with Nathan's for the purchase of three Nathan's franchises at the following locations: (1) 389 Avenue of the Americas, New York, New York; (2) 864 Broadway, New York, New York; and (3) 31–16 Steinway Street, Astoria, New York. On March 17, 1993, Protter entered into a franchise agreement on behalf of Fast Food to purchase the Nathan's franchise at 389 Avenue of the Americas. On November 16, 1993, Protter entered into a franchise agreement on behalf of Broadway to purchase the franchise at 864 Broadway. On February 28, 1994, Protter entered into a franchise agreement on behalf of Steinway to purchase the franchise at 31–16 Steinway Street. Protter executed a personal guarantee in connection with each of these purchases. According to Protter, the plaintiff purchased the three franchises as the result of material misrepresentations made by the defendants during the course of the negotiations.

The Complaint alleges a variety of misrepresentations by the defendants. Specifically, Protter alleges that the defendants stated that they would act in a support capacity for the plaintiff, and that they would provide training and information, so that the plaintiff could maximize the benefits of his investments, even though he had little prior experience in the fast food industry. Further, Nathan's allegedly misrepresented that the franchises had a higher profit margin than most fast food establishments because of their limited menu and reduced labor costs. In addition, Nathan's allegedly represented that Protter could expect food costs to comprise twenty-four percent of sales, labor costs to comprise twenty-two percent of sales and an after tax return of twenty-five percent, even though the defendants knew these figures to be inaccurate.

Protter further contends that the defendants misrepresented the franchisor's overall success. Specifically, Protter claims that in order to induce the sale, Nathan's explained that eight of its company owned stores were highly profitable, knowing that those stores were not representative of what the plaintiff could expect. For example, Nathan's failed to explain that in December 1992, sales for Coney Island Hot Dogs, Inc., a multiple unit franchisee operating in the northeast had a 24.7 percent decline in sales with individual stores experiencing declines as high as 46.5 percent. Moreover, sales continued to decline throughout 1993 culminating in a 12.9% decline in December 1993. Similar declines were experienced by the largest franchisee in Florida, Coney Island Hot Dogs of Florida which had a 26.5 percent decline in sales in December 1992 with individual stores losing as much as 30.7 percent, and declining sales throughout 1993 culminating with a 17.3 percent drop in December 1993.

Protter also asserts that Nathan's misrepresented its intentions with respect to how the $15 million raised in its public offering was to be used. The plaintiff alleges that he was told that money was to be used to improve the franchisor's infrastructure and open nineteen more company owned restau-

rants. Since that time however, there has been no effort made to implement these plans.

The plaintiff further asserts that he was told that Nathan's would approve all site locations and menus to maximize use of space and customer preferences. Protter contends that these approvals falsely implied that the plaintiff could expect their sales to reach the national average. Moreover, with respect to the store located at 389 Avenue of the Americas, the defendants never informed the plaintiffs of the failure of a company owned store located across the street ten years earlier.

In addition to the material misrepresentations and omissions stated above, the plaintiff also alleges numerous other omissions of material facts by the defendants to induce the sales of the franchises. Among these alleged omissions are the defendants' failure to disclose significant hidden costs associated with running the franchises and the severity of sales declines that other stores were experiencing over the last several years; that other franchises had found themselves in a variety of financial difficulties at the time the plaintiff entered into the franchise agreements; that prior to entering the franchise agreements the defendants failed to admit that they were parties to lawsuits; and that the defendants received kickbacks from third parties, presumably for referring the plaintiff to these third parties for services rendered while operating the franchises.

The plaintiff claims, that as a result of these misrepresentations they have incurred over $1.8 million dollars in damages including franchise fees, construction and equipment expenses, legal expenses, and rental expenses as a result of delays in opening the restaurants. Protter also claims that, based on the promised twenty-five percent return, he has lost $1 million in profits and stands to lose another $10 million. As a result, the plaintiff seeks $13,088,359 in monetary damages.

*Discussion*

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'". *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)); *see also IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052–53 (2d Cir.1993). The Second Circuit stated that in deciding a Rule 12(b)(6) motion a Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken". *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993); *see also Rent Stabilization Ass'n of the City of New York v. Dinkins*, 5 F.3d 591, 593–94 (2d Cir.1993) (citing *Samuels*, 992 F.2d at 15).

█ It is not the Court's function to weigh the evidence that might be presented at a trial, the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman*, 754 F.2d at 1067, and in doing so, it is well settled that the court must accept the allegations of the complaint as true, *see LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs, Inc.*, 879 F.2d 10, 14 (2d Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

In addition to the foregoing standard governing Rule 12(b)(6) motions, the Court must be mindful of the relevant rules of pleading. In general, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice". Fed.R.Civ.P. 8(f). However, because the two RICO claims at issue are based on allegations of mail fraud, the more stringent requirements of Rule 9(b) apply, requiring that "all averments of fraud ...

shall be stated with particularity." Fed. R.Civ.P. 9(b).

### The Plaintiff's RICO Claim

#### (i) The RICO allegations and the fraud allegations

Allegations of the predicate act of mail fraud, must pass muster under Fed.R.Civ.P. 9(b), which requires that:

> In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

■ One of the primary purposes of the specificity requirement of Rule 9(b) "is to insure that the defendant receives fair notice of plaintiff's claim, and is thus able to prepare a defense," *Hutton v. Klabal*, 726 F.Supp. 67, 72 (S.D.N.Y.1989), *citing, DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987), as well as to protect a defendant's reputation and to avoid strike suits. *See Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990); *Philan Ins., Ltd. v. Frank B. Hall & Co.*, 712 F.Supp. 339, 342 (S.D.N.Y.1989); *United States v. Rivieccio*, 661 F.Supp. 281, 290 (E.D.N.Y. 1987). To satisfy the particularity requirement of Rule 9(b), the allegations should "specify the time, place, speaker, and content of the alleged misrepresentations." *DiVittorio*, 822 F.2d at 1247, *citing, Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986). "These concerns are even more immediate in civil RICO actions, because such suits 'implicate the reputation interests of defendants accused of committing racketeering offenses.'" *Atlantic Gypsum Co., Inc. v. Lloyds International Corp.*, 753 F.Supp. 505, 512 (S.D.N.Y. 1990) (quotation omitted). However, "[b]ecause it would be unrealistic to expect a plaintiff to read a defendant's actual state of mind, ... [Rule] 9(b) permits plaintiffs to allege fraudulent intent generally while the circumstances amounting to fraud must be averred with particularity." *Powers v. British Vita P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995).

■ Moreover, 9(b) allegations may not be based upon information and belief. *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972).

An exception to this rule exists where the facts at issue are "peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of facts upon which the belief is based." *DiVittorio*, 822 F.2d at 1247.

■ If multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them. *See, e.g., Lou v. Belzberg*, 728 F.Supp. 1010, 1022 (S.D.N.Y.1990); *United States v. Rivieccio, supra; Laterza v. American Broadcasting Co.*, 581 F.Supp. 408, 413 (S.D.N.Y.1984). However, specific connection need not necessarily be made between the fraudulent representations and the specific defendants where the defendants are insiders. *DiVittorio*, 822 F.2d at 1247.

■ Nathan's argues that the plaintiff has failed to meet the strict pleading requirements of Rule 9(b) for two reasons. *First*, the defendants argue that the Complaint fails to specifically set forth the time, place and manner of the alleged misrepresentations as required under Rule 9(b). While the Court agrees that the Complaint is pleaded in a general, cursory fashion, more acceptable under Fed.R.Civ.P. 8, governing pleadings for causes of action other than fraud, the Court does not find the Complaint so insufficient as to warrant dismissal of the fraud claim for lack of particularity. The Complaint is forty-one pages long, containing 163 paragraphs. While 161 of them refer to the defendants collectively, in violation of certain Rule 9(b) pleading requirements, *see Lou, supra*, and allege general references to misrepresentations without offering the time at which those misrepresentations occurred, *see DiVittorio, supra*, paragraph 125, which contains eight subparagraphs, and paragraph 126 do make specific references to alleged misrepresentations made by defendants Norbitz and Dioguardi during January 1993 in order to induce the plaintiffs to purchase the Nathan's franchises. The Court finds that these allegations under Rule 9(b) are sufficient to survive Nathan's Rule 12(b)(6) motion to dismiss.

■ *Second*, the defendants assert that the Complaint fails to plead facts sufficient to give rise to an inference of fraudulent intent.

Again, while the facts alleged are pled generally, the Court declines to find that they fail to state a cause of action when read in the light most favorable to the plaintiff. Some of the so-called representations alleged in the Complaint address reasonable expectations, such as profits and labor and food costs, which may be understood to be the defendants' opinions rather than misrepresentations of fact, which would not give rise to an inference of fraudulent intent. However, the Complaint also states that defendant Dioguardi made representations that eight company stores were highly profitable in an effort to portray Nathan's franchises as successful when most of the restaurants were operating at a loss. In addition, the Complaint alleges that Norbitz told the plaintiffs that the money raised during the public offering was going to be used to improve the franchisor's infrastructure, when in fact none of the money was applied for that purpose. These allegations are sufficient to give rise to an inference of fraudulent intent. Accordingly, the Court declines to dismiss the plaintiff's fraud claims under Rules 12(b)(6) and 9(b).

### (ii) *RICO Elements*

The defendants also move to dismiss the causes of action based on alleged RICO violations under 18 U.S.C. § 1962(a), (b) and (c). The threshold pleading requirements of a private action under § 1962 of RICO were set forth in *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984), as follows:

"To state a claim for damages under RICO a plaintiff has two pleading burdens. First, he must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as 'criminal RICO.' In so doing, he must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.... Plaintiff must allege

adequately defendant's violation of section 1962 before turning to the second burden—*i.e.,* invoking RICO's civil remedies of treble damages, attorneys fees and costs.... To satisfy this latter burden, plaintiff must allege that he was 'injured in his business or property *by reason of* a violation of section 1962'" (*id.* at p. 17. [citations omitted]).

The defendants contend that the plaintiff has not pled the required elements necessary to establish a civil RICO claim. Specifically, the defendants argue that the plaintiff has failed to plead the requisite predicate acts of racketeering activity, in this case mail and wire fraud, with sufficient particularity under Rule 9(b), that the plaintiff has failed to plead a pattern of racketeering activity, and failed to sufficiently plead that the alleged RICO violations are the proximate cause of the plaintiff's injuries. The Court will address each of these arguments in turn.

### (A) *Mail and wire fraud*

Racketeering activity is defined under RICO to include mail and wire fraud in 18 U.S.C. § 1961(1)(B). As the Second Circuit has noted:

To be guilty of mail fraud, a defendant must have used the mail as a means to obtain "money or property by means of false or fraudulent pretenses, representations, or promises" or for purposes of executing a scheme to defraud. A showing of intentional fraud, *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 49 (2d Cir.1987), *cert. denied,* 484 U.S. 1005 [108 S.Ct. 698, 98 L.Ed.2d 650] (1988), or "reckless indifference to the truth" is necessary to satisfy "the requisite knowledge and criminal intent" element of mail fraud. *United States v. Sheiner,* 273 F.Supp. 977, 983 (S.D.N.Y.1967), *aff'd,* 410 F.2d 337 (2d Cir.), *cert. denied,* 396 U.S. 825 [90 S.Ct. 68, 24 L.Ed.2d 76] (1969). Acts done inadvertently, mistakenly, or in good faith without an intent to defraud do not satisfy the requirements of the statute. *O'Malley v. New York City Transit Authority,* 896 F.2d 704, 706 (2d Cir.1990).

108

"The elements of wire fraud are (1) a scheme to defraud and (2) use of interstate wire communication to further that scheme." *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 997 (E.D.N.Y.1995), *citing, United States v. Lemire,* 720 F.2d 1327, 1334–35 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984) (noting that the requisite elements of wire fraud and mail fraud are the same); *see also McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992) (recognizing the same two elements must be pled to establish a claim for mail fraud).

■ Allegations of mail and wire fraud must be made with the particularity required by Fed.R.Civ.P. 9(b). Pursuant to this higher pleading standard, the "Complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *McLaughlin,* 962 F.2d at 191; *see also Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). Specifically, the plaintiff "must set forth the contents of the [misrepresentations] and specify how each of the items was false and misleading." *Official Publications, Inc. v. Kable News Co., Inc.,* 692 F.Supp. 239, 245 (S.D.N.Y.1988), *aff'd in part, rev'd in part,* 884 F.2d 664 (2d Cir.1989).

■ Protter has sufficiently pled his claim for mail fraud under 18 U.S.C. § 1341. While much of the Complaint is pled in a general fashion, the allegations in paragraph 126 are set forth with sufficient particularity to satisfy Rule 9(b). Paragraph 126 alleges that on March 4, 1993, defendant Norbitz sent through the mail to one Roger Lipton ("Lipton"), an agent of the plaintiff's, a summary chart representing Nathan's average sales, food costs and operating profits. The Complaint further alleges that this chart was sent in furtherance of the defendants' fraudulent scheme, consisting in part of misrepresentations about costs and profits in order to induce the plaintiff to purchase the three franchises. Accordingly, the Court finds that Protter has sufficiently pled the use of the mails in furtherance of a fraudulent scheme.

■ The plaintiff's wire fraud claims are also sufficient to pass Rule 12(b)(6) muster. In paragraph 125 of the Complaint, the plaintiff alleges that between January and the middle of March 1993, defendants Norbitz and Dioguardi had several telephone conversations with the plaintiff's employees or agents, including Lipton. Although the defendants allege that the conversations with Lipton should not be considered because Lipton is not a plaintiff in this action, the Complaint alleges that Lipton was acting as an agent of the plaintiff during the time at issue. Accordingly, the Court is free to consider these conversations in its analysis.

The Complaint alleges that during the course of these conversations Dioguardi intentionally represented that eight company owned franchises were highly profitable in order to induce the Protter to purchase three others, when Dioguardi knew that those eight franchises were not representative of Nathan's franchises as a whole, many of which had been losing large amounts of money over the last two years. The plaintiff also alleges that defendant Norbitz represented that the $15 million raised in the recent public offering were going to be used to improve the franchisor's infrastructure in order to induce the plaintiff to purchase the franchises when he knew the money was not going to be applied for that purpose. Accordingly, the plaintiffs have met the Rule 9(b) pleading requirements for the predicate acts of wire fraud.

■ As a corollary matter, the defendants also argue in a footnote that since the phone calls at issue were intrastate, they do not constitute predicate acts for the purposes of a RICO analysis. As to the use of footnotes to urge a relevant issue, the Court notes with approval the words of New Jersey Supreme Court Justice Robert L. Clifford:

They distract, they cause the reader to drop the eyes; to absorb what is usually a monumental piece of irrelevancy or pseudo-scholarship but is sometimes … a significant pronouncement that rightly belongs in the text; and then to return, without skipping a beat, to the point of

departure on the upper part of the page....

The whole irritating process points up the soundness of John Barrymore's observation. Barrymore, he recalled, once said that reading footnotes was like having to run downstairs to answer the doorbell during the first night of the honeymoon. N.Y.L.J., July 18, 1993 (internal quotations omitted).

In this regard, the defendants' attorneys are directed to the Second Circuit's opinion in *United States v. Restrepo*, 986 F.2d 1462 (2d Cir.1993), as follows:

> We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review. The enormous volume of briefs and arguments pressed on each panel of this court at every sitting precludes our scouring through footnotes in search of some possibly meritorious point that counsel did not consider of sufficient importance to include as part of the argument. *Id.* at 1463.

In any event, the Court disagrees with the defendants' contentions. As this Court has previously held, where the phone calls alleged may have been intrastate, but the defendants were clearly involved in interstate commerce, this Court will find the interstate commerce sufficiently pled for rule 12(b)(6) purposes. *See Mathon v. Marine Midland Bank, N.A.*, 875 F.Supp. 986, 988 (E.D.N.Y. 1995). In this case, although the Complaint fails to allege that the phone calls at issue were interstate, Nathan's is clearly an interstate operation, as demonstrated by paragraph 56 which addresses the Company's Florida operations. Accordingly, the Court finds that the allegations of wire fraud sufficiently plead the interstate commerce requirement.

**(B)** *Pattern of racketeering activity*

▮▮▮▮ The defendants also argue that the Complaint fails to allege a "pattern" of racketeering sufficient to survive a rule 12(b)(6) motion. The Court agrees. In order to demonstrate a pattern of racketeering under 18 U.S.C. § 1962, a plaintiff must establish that the conduct in question amounts to, or constitutes a threat of, continuing racketeering activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989). "Continuity is both a closed- and open-ended concept, referring to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. at 2902; *see also GICC Capital Corp. v. Technology Finance Corp.*, 67 F.3d 463 (2d Cir.1995) (discussing the difference between open ended and closed ended continuity). Predicate acts continuing over a few weeks or months and threatening no future criminal conduct do not satisfy this continuity requirement. *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. at 2902.

The Second Circuit has recently elaborated on this standard stating:

> in cases where the acts of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established by the nature of the activity, even though the period spanned by the racketeering acts was short. In contrast, in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts have generally found no threat of continuing criminal activity arising from conduct that extended over even longer periods.

*United States v. Aulicino*, 44 F.3d 1102, 1111–12 (2d Cir.1995); *Mathon v. Marine Midland Bank, N.A.*, 875 F.Supp. 986, 998 (E.D.N.Y.1995); *see also Vemco, Inc. v. Camardella*, 23 F.3d 129 (6th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 579, 130 L.Ed.2d 495 (1994) (no threat of continuity where contract fraud was aimed at obtaining payment for a single paint system even though the alleged fraud lasted over seventeen months); *Thompson v. Paasche*, 950 F.2d 306 (6th Cir.1991) (no threat of continuity where the defendant's goal was the sale of land and the alleged fraud took place over a five month period); *Vicom, Inc. v. Harbridge*

*Merchant Services, Inc.,* 20 F.3d 771 (7th Cir.1994) (nine month scheme revolving around the sale and leasing of equipment was a "discrete" and "finite" incident insufficient to satisfy the continuity requirement under RICO); *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34 (1st Cir.1991) (no threat of continuity where misrepresentation to plaintiffs at twenty-five real estate closings spanned three to four months); *Continental Realty Corp. v. J.C. Penney Co.,* 729 F.Supp. 1452 (S.D.N.Y.1990) (finding no continuity where the alleged fraud was directed at a single real estate transaction); *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F.Supp. 579 (S.D.N.Y.1989) (repeated misstatements of the amount of consideration paid for airline tickets over thirteen months was insufficient to establish a RICO claim).

Further elaborating on this important distinction, the Second Circuit noted that where three murders were committed over a nine month period, a discussion of continuity was not even necessary because the acts by their very nature threatened repetition satisfying the continuity prong of RICO. *Aulicino,* 44 F.3d at 1111–12, discussing, *United States v. Simmons,* 923 F.2d 934 (2d Cir.), *cert. denied,* 500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991). Conversely, the *Aulicino* court also recognized that where the sale of an 80% interest in a business was involved, "rather than any inherently unlawful goal," a trial court's instructions that a few weeks or months might constitute a substantial period of time was erroneous. *Aulicino,* 44 F.3d at 1112, discussing, *Metromedia Co. v. Fugazy,* 983 F.2d 350, 368–69 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993) (upholding a RICO verdict because the predicate acts did not span weeks or months but rather years and the erroneous instruction was harmless).

Under the rule in *Aulicino,* the unlawful activity alleged in this case, namely, purchasing franchises, is not inherently unlawful. Rather it is the same type of activity that the *Aulicino* Court referred to in its analysis of *Metromedia,* the sale of a property interest. Moreover, while the entire series of events began with the negotiations some time after February 1993 and ended with the purchase of the third franchise in February 1994, the plaintiff concedes in his memorandum in opposition to the motion to dismiss that the actual fraudulent acts only lasted "a few months." Accordingly, the allegedly unlawful activity is insufficient to constitute a continuous pattern of racketeering activity. The fact that the Complaint makes a single conclusory allegation in paragraph 128 that, upon information and belief, the defendants have attempted to perpetrate similar unlawful schemes upon others is insufficient to alter this determination, unless the plaintiff pleads facts explaining this belief and sufficiently alleging a cause of action based on such conduct. *See Segal, supra.* Accordingly, the plaintiff's RICO allegations must be dismissed for failure to allege a pattern of racketeering activity.

### (C) *Causation*

The defendants further contend that the plaintiff's RICO claims should be dismissed because they fail to allege the requisite proximate cause. The Court disagrees. RICO requires under 18 U.S.C. § 1964(c) that a plaintiff alleging RICO violations must establish that he was injured in his business or property as the result of the RICO violation alleged. The facts alleged must demonstrate that the unlawful activity in question was the proximate cause of the plaintiffs' injuries as well as the actual cause. *Standardbred Owners Ass'n v. Roosevelt Raceway Assocs.,* 985 F.2d 102, 104 (2d Cir. 1993). The test is whether the injury is reasonably foreseeable or anticipated as a natural consequence. *Id.* As discussed above, Protter alleges that as a result of defendants' misrepresentations regarding the success of other franchises and the franchisor's future plans, he was induced to purchase the Nathan's franchises. The Court finds that these allegations are sufficient to establish that the alleged injuries were reasonably foreseeable under the circumstances. To the extent that the plaintiff's business woes were the result of market forces, as the defendants' argue, and not the defendants' alleged misrepresentations, such an issue constitutes a question of fact better resolved at trial than on a motion to dismiss.

### (iii) *State law claims*

The defendants also move to dismiss the plaintiffs state law claim based New York General Business Law. However, because the plaintiffs RICO claims must be dismissed, this Court lacks subject matter jurisdiction to hear the common law fraud and state statutory claims. Because this lawsuit is at such an early stage of litigation, the Court declines to assert supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, and these claims are also dismissed.

### (iv) *Leave to replead*

Rule 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." *See also Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283, 287 (2d Cir.1974). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment" will serve to prevent an amendment prior to trial. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord Health–Chem Corp. v. Baker,* 915 F.2d 805 (2d Cir.1990); *Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co.,* 657 F.Supp. 136, 141 (E.D.N.Y.1987).

Leave to amend may be denied if the amendment would be futile. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *In Re American Express Co.,* 39 F.3d 395, 402 (2d Cir.1994); *John Hancock Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994); *Ruffolo v. Oppenheimer & Co., Inc.,* 987 F.2d 129, 131 (2d Cir.1993). While the Court finds the Protter's Complaint insufficient, the Court cannot determine that the plaintiff could not, under any circumstances, sufficiently allege his claims. Therefore, leave to replead is granted with respect to all of plaintiffs' claims.

With regard to amendment of the Complaint, the plaintiff is cautioned about perfunctory substantive or cosmetic changes. The Court notes with approval Judge Leisure's thoughtful comments in Spier v. Er-

ber, 1990 Transfer Binder, Fed.Sec.L.Rep. (CCH), ¶ 95,287 (S.D.N.Y.1990):

[I]t has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11. Conversely, a renewed Rule 9(b) motion after an adequate and thorough repleading can also be viewed as frivolous.

In the event the plaintiff files a complaint that is insufficiently pled or not in accord with this Court's prior rulings, the Court may take appropriate action in this regard.

### *Conclusion*

Accordingly, based on the papers submitted by the parties, and the oral argument heard today, it is hereby

ORDERED, that the plaintiff's motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is granted with respect to Counts IV, V and VI alleging causes of action under RICO, 18 U.S.C. § 1962, and that the remaining state law claims are dismissed for lack of subject matter jurisdiction; and it is further

ORDERED, that the plaintiff is granted leave to amend the Complaint, and may file and serve an Amended Complaint on or before thirty days from the date of this Decision and Order, which Complaint must be drawn in compliance with this Decision and Order.

SO ORDERED.