**Todd TURNER and Erin Turner (f/k/a Erin McClain), Plaintiffs,**

v.

**NEW YORK ROSBRUCH/HARNIK, INC. (d/b/a Strategies for Wealth), and the Estate of Alvin Russell Lewis, Defendants.**

**No. 12–cv–6256 (WFK)(RER).**

United States District Court, E.D. New York.

Signed Feb. 3, 2015.

Filed Feb. 4, 2015.

Christopher Scott Cardillo, Cardillo & Keyser, PC, New York, NY, for Plaintiffs.

David Alan Stein, Luboja & Thau, LLP, New York, NY, for Defendant.

*DECISION & ORDER*

WILLIAM F. KUNTZ II, District Judge:

By complaint filed December 20, 2012, Plaintiffs Todd and Erin Turner (together, "Plaintiffs"), allege that Defendants New York Rosbruch/Harnik (d/b/a Strategies for Wealth) (hereinafter referred to as "NYRH") and Alvin Russell Lewis[1] (collectively, "Defendants"), an employee of NYRH, committed fraud, breached their fiduciary duties, aided and abetted fraud, and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964. Plaintiffs specifically allege that Defendants entered into a corrupt agreement to use email and phone to misrepresent to Plaintiffs that certain of their investments would be used to fund short-term, high-interest loans to third parties when such loans were not being used for those purposes, which caused Plaintiffs to suffer severe financial hardship. Defendant NYRH moves to dismiss these claims pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure for failure to state a civil RICO claim and failure to satisfy the pleading requirements. For the reasons discussed below, Defendant's motion is GRANTED.

## BACKGROUND

Plaintiffs Todd and Erin Turner, residents of New York at the time this action was filed, were introduced to Alvin Russell Lewis in December 2004 as a potential investment adviser. Compl. ¶¶ 2–3, 17. At the time, Lewis was employed as a financial advisor by Defendant NYRH, a New York Corporation with a principal place of business at 140 Broadway, New York, NY. *Id.* ¶¶ 6–7, 9. After several meetings at NYRH's office, Lewis was retained to financially advise Plaintiffs. Compl. ¶ 18.

During the course of the parties' relationship, Lewis sold life insurance policies to Plaintiffs, provided legal advice related to a condominium, and "provided general financial and tax planning advice, as well as investment opportunities, including but not limited to the purchase of stocks and the funding of privately placed loans." *Id.* ¶¶ 21–22. Additionally, Lewis offered Plaintiffs opportunities to fund short-term high-interest loans to third parties. *Id.* ¶ 27. Over a course of three years, Plaintiffs ultimately funded eleven such loans. *Id.* ¶¶ 27–28, 48.

According to Plaintiffs, Lewis provided advice to Plaintiffs both via constant email contact and in frequent meetings at Lewis's office at NYRH. *Id.* ¶¶ 23, 25. During

---

1. Lewis is deceased. As such, he is not individually named as a Defendant, but the Estate of Alvin Lewis is a named Defendant.

these meetings, NYRH employees, including receptionists, saw and in some cases greeted Plaintiffs. *Id.* ¶ 24. Furthermore, Lewis sent Plaintiffs e-mails primarily during business hours via his personal and corporate e-mail accounts. *Id.* ¶ 26.

By September 2011, Lewis began to default on the payments to Plaintiffs due under the notes for the loans. *Id.* ¶ 32. During the following months, Plaintiffs allege that Lewis evaded their request for an explanation or to render payment. *Id.* ¶ 33. On November 3, 2011, Lewis committed suicide. *Id.* ¶ 34. At this time, Plaintiffs allege that they found themselves in severe financial hardship as they had lost $350,000. *Id.* ¶¶ 35–36.

The Complaint further alleges that unfortunately for Plaintiffs, the loans presented by Lewis were for the most part non-existent. *Id.* ¶ 29. Although the notes for the loans were made to actual companies, the companies deny the existence of any loans and disclaim any claim for monies owed to Plaintiffs. *Id.* ¶¶ 30–31. When Plaintiffs questioned NYRH principal, Jerry Harnik, about the situation, Harnik informed Plaintiffs "that he is not aware of any connection between the promissory notes issued by Mr. Al Lewis and [NYRH]." *Id.* ¶¶ 37–38. Plaintiffs ultimately contend that Harnik denied any responsibility on behalf of NYRH even though Plaintiff's were clients for eight years, Lewis worked for NYRH, and Plaintiffs and Lewis communicated at NYRH offices and over NYRH e-mail. *Id.* ¶ ¶ 38–39.

Plaintiffs assert four causes of action against Defendants. First, Plaintiffs assert a cause of action based on fraud. According to Plaintiffs, Lewis, as an employee of NYRH, misrepresented to them on numerous occasions that "their investments would be used to fund short term high interest loans to third parties." *Id.*

¶ 48. As part of this misrepresentation, Lewis assured Plaintiffs that because the loans were made to other NYRH clients, the loans would be supervised and managed by NYRH, and that the loans did in fact exist and would be profitable. *Id.* ¶¶ 49–50. However, Plaintiffs allege that Lewis never intended to use Plaintiffs' monies for the stated purposes, but "intended and did use the monies received from Plaintiffs for his personal benefit." *Id.* ¶¶ 51–52. Because Plaintiffs had hired Lewis to provide " 'wealth strategies' " and had purchased legitimate life insurance from Lewis, Plaintiffs contend they justifiably relied on Lewis's representations regarding the investments. *Id.* ¶ 53. Further, Plaintiffs contend they were damaged "in that they lost the money that they 'invested' with Lewis." *Id.* ¶ 54. As an example, Plaintiffs highlight an investment opportunity Lewis presented to Plaintiffs on August 13, 2011 to loan The Steptoe Group $50,000. *Id.* ¶ 55. Plaintiffs decided to make the $50,000 investment to "reap the benefits of the high interest rate they were supposed to receive on their investment." *Id.* ¶¶ 57, 59. Although Lewis provided Plaintiffs with a note representing that the money had been lent, The Steptoe Group denies receiving any money in connection with the loan. *Id.* ¶¶ 60–61. Plaintiffs claim that Lewis misrepresented this loan because he never intended to use the money to fund the loan. *Id.* ¶ 56.

Second, Plaintiffs assert a cause of action based on breach of fiduciary duty. Plaintiffs allege that because Defendants were hired to provide financial planning and advice, Defendants were under a duty to act for and/or give advice that would benefit Plaintiffs, especially with respect to matters within the scope of the parties' financial advisory relationship. *Id.* ¶¶ 64–65. Plaintiffs contend that Defendants

breached their fiduciary duty by providing detrimental advice, including advising Plaintiffs to invest in non-existent loans. *Id.* ¶¶ 70–71. Moreover, Plaintiffs contend that NYRH breached its fiduciary duties by failing to "adequately supervise the hiring and activities of their employees and/or agents." *Id.* ¶ 72, According to Plaintiffs, NYRH owed Plaintiffs a duty to hire qualified and trustworthy individuals by conducting appropriate background investigations into potential employees, and supervise how their facilities, staff, and other company assets were being used. *Id.* ¶¶ 73–74. Plaintiffs contend that they invested with Defendants based on NYRH's reputation for professionalism, honesty, and integrity. *Id.* ¶ 76. Plaintiffs argue they suffered hundreds of thousands of dollars in damages because NYRH's reputation was "clearly illusionary." *Id.* ¶¶ 77–78.

Third, Plaintiffs assert a RICO cause of action. Plaintiffs allege that there was a corrupt agreement between the Defendants where NYRH either agreed to take direct part in Lewis' allegedly criminal activities and/or agreed to allow Lewis to commit criminal activities against Plaintiffs. *Id.* ¶ 80. Plaintiffs contend that Lewis was only able to "dupe the Plaintiffs into funding more than two bogus mortgages within a three year period" because he was allowed to use NYRH's facilities, telephones, and email accounts. *Id.* ¶¶ 81–83. Plaintiffs also allege that because NYRH was aware that Lewis maintained two residents, one in New York and one in Maryland, it was "reasonably foreseeable" that "the majority of the fraudulent activity in this case [would involve] the use of interstate telephone communications and the wiring of money between banks located in the two states." *Id.* ¶¶ 85–86. As such, NYRH intentionally entered into the corrupt agreement to receive the money

earned through Lewis's allegedly illegal activities. *Id.* ¶ 88.

Plaintiffs' fourth and final cause of action is for "adding [*sic*] and abetting fraud." *Id.* at p. 9. Plaintiffs allege that the fraud could not have been perpetrated against them without the combined efforts of all Defendants and that all Defendants were aware and/or consciously chose not to be aware of the fraud being committed. *Id.* ¶¶ 92–94. Essentially, Plaintiffs contend that they hired NYRH as financial advisors, and Lewis merely served as the nexus between NYRH and Plaintiffs. *Id.* ¶ 96. Therefore, the fraud would not have been possible but for NYRH aiding and abetting Lewis's activities. *Id.* ¶ 98.

Based on the foregoing facts, Plaintiffs seek $350,000 in actual losses, $5,000,000 in punitive damages, and at least $1,500,000 in treble pecuniary damages under RICO. *Id.* at p. 10.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), each claim must set forth sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks and citation omitted). A sufficiently pled complaint "must provide 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 717 (2d Cir.2013) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937). If a complaint merely offers labels and conclusions, a formulaic recitation of the elements, or "naked assertions devoid of further factual enhancement," it will not survive a motion to dismiss. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167

L.Ed.2d 929 (2007)) (internal quotation marks and alteration omitted). At this stage, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of Plaintiff, the non-movant. *Harris v. Mills,* 572 F.3d 66, 71 (2d Cir.2009). However, the Court need not credit "legal conclusions" in a claim or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 72 (citing *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937) (internal quotation marks and alteration omitted). Moreover, the Court is "not bound to accept as true legal conclusion couched as factual allegation." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955) (internal quotation marks omitted). Legal conclusions must be supported by factual allegations. *Id.; Pension Benefit Guar. Corp,* 712 F.3d at 717–18.

■ In addition to the foregoing standards governing Rule 12(b)(6) motions, the Court must also be mindful of the relevant rules of pleading. Where Plaintiffs are alleging claims based on fraud, they must satisfy the more stringent pleading requirements of Rule 9(b), which demands that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "[T]he allegations should 'specify the time, place, speaker, and content of the alleged misrepresentations.'" *Protter v. Nathan's Famous Sys., Inc.,* 904 F.Supp. 101, 106 (E.D.N.Y.1995) (Spatt, J.) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987)). More specifically, "this standard imposes an obligation on plaintiff to 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" *Suez Equity Investors, L.P. v. Toronto–Dominion Bank,* 250 F.3d 87, 95 (2d Cir.2001) (quoting *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989)). Further, the complaint must "explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Caputo v. Pfizer, Inc.,* 267 F.3d 181, 191 (2d Cir.2001) (internal quotations and citation omitted; brackets in original). This burden also "governs civil RICO complaints alleging predicate acts of mail fraud, wire fraud and bank fraud." *Leung v. Law,* 387 F.Supp.2d 105, 112 (E.D.N.Y. 2005) (Garaufis, J.) (citing *Morrow v. Black,* 742 F.Supp. 1199, 1203 (E.D.N.Y. 1990) (Platt, C.J.)). With these principles in mind, we turn to our analysis of Defendant's motion to dismiss.

## ANALYSIS

### 1. RICO Claim

The Court first turns to the question of whether Plaintiffs have adequately alleged a federal civil RICO claim because, without this claim, federal jurisdiction is in jeopardy.

■ At the outset, it should be noted that "[c]ivil RICO is an unusually potent weapon-the litigation equivalent of a thermonuclear device." *Bell v. Hubbert,* 95–CV–10456, 2007 WL 60513, at *5 (S.D.N.Y. Jan. 8, 2007) (Sweet, J.) (citing *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir.1991)) (internal quotation marks omitted). "Because the mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Id.* (quoting *Katz-*

man v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y.1996) (Sweet, J.)) (internal quotations omitted). The Court will not permit a civil RICO suit to go forward when, in fact, it is merely "an effort to construct a treble damage suit from what, at best, is a civil wrong[.]" Kimm v. Lee, 04–CV–5724, 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005) (Baer, J.), aff'd sub nom. Kimm v. Chang Hoon Lee & Champ, Inc., 196 Fed.Appx. 14 (2d Cir.2006).

Because the Complaint alleges a RICO violation based on 18 U.S.C. § 1343 (Fraud by wire, radio, or television), the Court will examine the sufficiency of the pleadings pursuant to these allegations. Compl. ¶¶ 86–90. ·Defendant NYRH argues that Plaintiffs' RICO claim fails for two primary reasons: (1) Plaintiffs are unable to meet the pleading requirements of Rule 9(b), and (2) Plaintiffs fail to state a RICO cause of action. See NYRH Br. at 7–9, 14–17; Reply Br. at 6–9. For the reasons set forth below, Defendants are correct.

### a. Plaintiffs' RICO Claim Does Not Meet the Stringent Pleading Requirements of Rule 9(b).

As briefly discussed above, "[i]t is well settled that when a RICO plaintiff alleges that one of the predicate acts is fraud, the predicate acts must be pled with particularity." USA Certified Merchants, LLC v. Koebel, 262 F.Supp.2d 319, 332 (S.D.N.Y.2003) (Marrero, J.) (citing Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir.1999) and Plount v. Am. Home Assurance Co., 668 F.Supp. 204, 207 (S.D.N.Y.1987)). With respect to a claim of wire fraud, the claim must identify specifics such as "the content, date, and place of any alleged misrepresentations as well as the identity of the persons making them." Bernstein v. Misk, 948 F.Supp. 228, 239 (E.D.N.Y.1997) (Glasser, J.). However, "in cases in which the plaintiff claims that the mails or wires were used in furtherance of a master plan to defraud, as opposed to cases in which the mailings themselves are alleged to be fraudulent, some courts have held that a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)." USA Certified Merchants, LLC, 262 F.Supp.2d at 332. Where "multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them." Protter, 904 F.Supp. at 106 (citing Lou v. Belzberg, 728 F.Supp. 1010, 1022 (S.D.N.Y.1990), United States v. Rivieccio, 661 F.Supp. 281, 290 (E.D.N.Y.1987), and Laterza v. Am. Broad. Co., 581 F.Supp. 408, 413 (S.D.N.Y.1984)).

Moreover, "[a]lthough Rule 9(b) provides that intent and other conditions of mind may be averred generally, plaintiffs must nonetheless provide some factual basis for conclusory allegations of intent." USA Certified Merchants, LLC, 262 F.Supp.2d at 333 (citing Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987)). Therefore, the factual allegations must give rise to a strong inference to establish the defendants possessed the necessary fraudulent intent. "Intent is commonly demonstrated by specifying a motive for committing fraud, i.e., that the defendant benefitted from the alleged fraud, and an opportunity to do so. If motive is not apparent, scienter can be demonstrated through a showing of conscious behavior by the defendant." Id. (emphasis in the. original). Here, the Complaint does not meet this standard of particularity with respect to Plaintiffs' RICO claim as to NYRH for several reasons.

First, Plaintiffs do not describe with any particularity the underlying fraudulent scheme regarding any "corrupt

agreement" amongst the Defendants. Although Plaintiffs allege that Defendants "voluntarily and intentionally devised or participated in a scheme to defraud Plaintiff's [sic] out of money," and claim that "[i]n order for the fraud to have been successful all of the Defendants needed to work in concert to present Plaintiffs with financial advisory services that appeared to be reputable but in reality were diabolical," Plaintiffs' Complaint fails to explain any particulars such as how and when the Defendants worked together to defraud Plaintiffs. Compl. ¶¶ 86, 95. Instead, Plaintiffs broadly claim that a "corrupt agreement" existed between the Defendants because "[NYRH] allow[ed] their facilities to be used by Lewis as a base of operations for his criminal conduct," and "allowed Lewis to use [NYRH's] communication equipment and utilities, including but not limited to telephones and telephone lines, facsimile machines and similar services if applicable, internet access and email accounts." Id. ¶¶ 81–82.

Moreover, notably absent from the Complaint is a detailed description explaining NYRH's involvement in the underlying scheme and connection with the mail and/or wire communications necessary to satisfy Rule 9(b). The only thing Plaintiffs allege in this respect is that because NYRH was aware that Lewis maintained two residents, one in New York and one in Maryland, it was "reasonably foreseeable" that "the majority of the fraudulent activity in this case [would involve] the use of interstate telephone communications and the wiring of money between banks located in the two states." Id. ¶¶ 85–86. Reasonably foreseeability is not enough to establish particularity. In sum, Plaintiffs have alleged nothing more than ordinary business transactions. Plaintiffs' theory is that by providing one of its employees access to the tools of modern business, NYRH entered into a "corrupt agreement"

with Lewis. This is simply not the law. The federal pleading standards require that Plaintiffs allege specific instances of the Defendants' entrance into a corrupt agreement. Reciting the most commonplace modern business tools given to any employee without alleging more does not turn an employment scenario into a "corrupt agreement."

Second, Plaintiffs' factual allegations do not give rise to a strong inference of fraudulent intent. Plaintiffs are unable to show any direct evidence of NYRH's knowledge of the fraudulent scheme. In fact, Plaintiffs' Complaint admits that Jerry Harnik, a principal at NYRH, was "not aware of any connection between the promissory notes issued by Mr. Al Lewis and [NYRH] or Guardian Life Insurance Company." Id. ¶¶ 37–38. Plaintiffs produce no evidence to rebut this, but simply refute it with conclusory allegations that "Harnik believed he had effectively insulated his company from any wrongdoing by either not providing any supervision to his employees and/or by merely ignoring their criminal activity." Id. ¶ 40.

Plaintiffs are also unable to provide any allegations suggesting that NYRH had a motive to commit fraud. As Plaintiffs concede in their complaint, "Lewis' [sic] intended and did use the monies received from the Plaintiffs for his personal benefit." Id. ¶ 52. Based on the Complaint, it is unclear how Plaintiffs contend that NYRH benefitted at all from Lewis's scheme as Plaintiffs make no allegations regarding how NYRH profited from Lewis's activities. Again, Plaintiffs only offer broad assertions that NYRH "entered into [the] corrupt agreement with the purpose of earning monies via Lewis' [sic] legal and illegal activities." Id. ¶ 88. This is insufficient to establish scienter under Rule 9(b). Without these particulars, the

requirements of Rule 9(b) are not satisfied and Plaintiffs' RICO claim cannot stand.

### b. Plaintiffs do not have a cognizable RICO claim.

 Plaintiffs' RICO claim must also fail for the independent reason that their Complaint lacks cognizable facts to establish a RICO violation as to NYRH. To bring a RICO claim, a plaintiff "must allege (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly to conduct or participate in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Crawford & Sons, Ltd. Profit Sharing Plan v. Besser*, 216 F.R.D. 228, 233 (E.D.N.Y.2003) (Spatt, J.) (citing 18 U.S.C. § 1962(a)-(c) and *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir.2001)). "The failure of any one element is fatal to a RICO claim." *In re Integrated Res. Real Estate Ltd. Partnerships Sec. Litig.*, 850 F.Supp. 1105, 1144 (S.D.N.Y.1993) (Sweet, J.).

 The RICO statute defines "racketeering activity" to include mail and wire fraud. 18 U.S.C. § 1961(1)(B). Where the RICO claim alleges mail or wire fraud, as is the case here, a plaintiff must prove that defendants "(1) [ ] participated in a scheme to defraud; (2)[ ] acted 'with knowledge' that the use of the mails or wires would follow in the ordinary course of business; and (3) the mailing or the use of wires was for the purpose of executing the scheme or fraud alleged." *USA Certified Merchants, LLC*, 262 F.Supp.2d at 333 (citing *In re Sumitomo Copper Litig.*, 995 F.Supp. 451, 455

(S.D.N.Y.1998) (Pollack, J.)). A plaintiff must prove that the defendant knowingly participated in the scheme and that the misrepresentations were material. Like allegations of fraud, "allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir.1993) (citing *Official Publications, Inc. v. Kable News Co., Inc.*, 692 F.Supp. 239, 245 (S.D.N.Y.1988) (Edelstein, J.), *aff'd in part, rev'd in part on other grounds*, 884 F.2d 664 (2d Cir. 1989)). As a result, "[a] complaint alleging mail and wire fraud must plead facts that give rise to a strong inference that the defendant possessed fraudulent intent." *Id.* (internal citation omitted).

 Our conclusion that Plaintiffs have failed to satisfy Rule 9(b) demands, as a corollary, the conclusion that these allegations cannot constitute a RICO cause of action based on mail and wire fraud as alleged in the Complaint. Without sufficient allegation of facts of NYRH's knowledge and participation in a scheme to defraud and intent to defraud, Plaintiffs' RICO claim must fail as a matter of law.

### 2. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims

 Plaintiffs' remaining causes of action for fraud, breach of fiduciary duty, and aiding and abetting are all based on state law.[2] When the federal claims are dismissed in an action with state law claims based on supplemental jurisdiction,

---

**2.** Plaintiffs' argument that this Court can retain jurisdiction over this action through diversity because Plaintiffs currently reside in Connecticut is flawed. *See* Opp. Br. p. 5. Diversity is determined at the time of filing, which is otherwise known as the time-of-filing

rule. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570–71, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004). Here, when Plaintiffs initiated their action, all parties were citizens of New York, thus destroying diversity.

the state claims should be dismissed as well. 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 61 (2d Cir.1998). While the dismissal of supplemental state claims is discretionary at this juncture, the usual case " 'will point toward declining jurisdiction over the remaining state-law claims.' " *In re Merrill Lynch*, 154 F.3d at 61 (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). Once a district court has dismissed all claims over which it has original jurisdiction, it still balances the traditional "values of judicial economy, convenience, fairness, and comity" while maintaining the guiding directive that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) (citing *Cohill*, 484 U.S. 343, 350 & n. 7, 108 S.Ct. 614 (1988)) (internal quotation marks omitted). Moreover, "[c]ourts consider their familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation when evaluating judicial economy." *Chenensky v. New York Life Ins. Co.*, 942 F.Supp.2d 388, 392 (S.D.N.Y. 2013) (Pauley, J.) (citing *Allard v. Arthur Andersen & Co.*, 957 F.Supp. 409, 425 (S.D.N.Y.1997) (Mukasey, J.)).

Here, the values of judicial economy support this Court's decision to refuse to exercise supplemental jurisdiction for the following reasons: First, the parties have not engaged in extensive discovery as discovery has been stayed during the Court's consideration of this motion. *See* Minute Entry for proceedings held on

3/28/13 before Judge William F. Kuntz, II. Second, the case is still in its early stages as this is the first dispositive motion brought by the parties and a trial date is not scheduled until December 2015. Lastly, Plaintiffs' state law claims will not be time-barred in New York state court due to dismissal. *See* N.Y. C.P.L.R. § 205(a) (permitting a plaintiff to bring a new action upon the same transaction "within six months after the [prior action's] termination."). Accordingly, Plaintiffs will suffer no undue prejudice by this Court's refusal to exercise supplemental jurisdiction over their state law claims.

In accordance with the guiding principle that district courts will not typically maintain state claims once the anchoring federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). The First, Second, and Fourth Causes of Action against NYRH are dismissed without prejudice.

### 3. Allowing Plaintiffs to Replead Would be Futile

"Although courts have the discretion to permit parties to amend their pleadings to correct initial pleading deficiencies, leave may be denied where repleading would be futile." *Gee Chan Choi v. Jeong–Wha Kim*, 04–CV–4693, 2006 WL 3535931, at *11 (E.D.N.Y. Dec. 7, 2006) (Glasser, J.) (adopting Magistrate Judge Reyes's Report and Recommendation in its entirety, which cites *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986) and *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir.2001)) (internal quotation marks and citations omitted); *see also Harrell v. Primedia, Inc.*, 02–CV–2893, 2003 WL 21804840, at *3 (S.D.N.Y. Aug. 6, 2003) (Martin, J.) ("Given the blatant defects in the Amended Complaint, there is no reason to believe that the

[p]laintiffs could state a RICO claim were they given another chance.").

Here, Plaintiffs can allege no set of facts ascribing to NYRH the purported fraud of Lewis, who Plaintiffs have already acknowledged, acted "for his own personal benefit." Compl. ¶ 52. Moreover, because Plaintiffs have already admitted that Lewis deceived them for his own personal benefit and nothing more, any proposed amendment to the Complaint would be futile. The motion to dismiss with respect to the Third Cause of Action is granted, with prejudice.

## CONCLUSION

For the reasons set forth above, Defendant New York Rosbruch/Harnik, Inc.'s Motion to Dismiss for Failure to State a Claim, Dkt. 27, is hereby GRANTED. The Court declines to exercise jurisdiction over Plaintiffs' state law claims and dismisses Counts 1, 2, and 4 without prejudice. Count 3 is dismissed with prejudice. Plaintiffs request for leave to replead is DENIED as futile.

**SO ORDERED.**