**Mary D. DORMAN, Troy Gustavson, Joseph Townsend, Plaintiffs,**

v.

**Bernadette CASTRO, individually and in her official capacity; Ray Dobbins, individually and in his official capacity, Police Officer Edward Powers, individually and in his official capacity, and Sergeant Walter H. Buhner, individually and in his official capacity, Defendants.**

No. 01–CV–5905.

United States District Court, E.D. New York.

Aug. 8, 2002.

Meenan & Associates, LLC by Colleen M. Meenan, of counsel, New York City, for plaintiffs.

Eliot Spitzer, Attorney General of the State of New York by Ralph Pernick, of counsel, Mineola, NY, for Defendants.

*Memorandum Of Decision And Order*

SPATT, District Judge.

## INTRODUCTION

Plaintiffs bring this action under 42 U.S.C. § 1983, claiming that Defendants violated several of their constitutionally protected rights. Presently before the Court is Defendants' motion to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## BACKGROUND

The relevant events underlying this action took place on the shore of Long Beach Point ("Long Beach"). Long Beach is part of Orient Beach State Park, and thus, as a New York state park is regulated and maintained by the New York State Office of Parks, Recreation and Historical Preservation ("OPRHP").

The OPRHP has issued a regulation prohibiting the operation of a boat or water-craft within 1,000 feet of any bathing beach. 9 NYCRR § 377.1(i). This regulation was apparently crafted as part of a OPRHP policy requiring all Long Beach visitors to enter the beach through the designated land-based entrance. The effect of this policy and regulation is that visitors are precluded from entering the beach from the water.

On September 4, 2000, allegedly in protest of the OPRHP policy, Plaintiffs entered Long Beach from the water. In short succession, Plaintiffs Dorman and Townsend swam ashore from anchored boats and Plaintiff Gustovson rowed ashore in a rubber dingy. Following Plaintiffs' unauthorized entry of the beach from the water, police officers directed Plaintiffs to exit the beach. When Plaintiffs refused to leave, they were issued appearance tickets which charged them with disorderly conduct, and directed them to appear in Southold Town Court on October 6, 2000.

At the October 6, 2000 court appearance, upon the affidavit of the arresting police officer, the appearance tickets were converted into an accusatory information. On May 15, 2001, Southold Town Justice William Price, Jr. dismissed the charges against Plaintiffs, finding that there were insufficient factual allegations supporting the accusatory information.

Plaintiffs commenced the instant action on August 29, 2001 by filing a summons and complaint. The Complaint, brought pursuant to 42 U.S.C. § 1983, asserts causes of action for: (1) violation of Plaintiffs' right to equal protection under the

Fourteenth Amendment; (2) violation of Plaintiffs' right to equal protection under the New York State Constitution; (3) violation of Plaintiffs' right to free speech under the First Amendment; (4) violation of Plaintiffs' right to substantive due process under the Fourteenth Amendment; (5) violation of Plaintiffs' right to procedural due process under the Fourteenth Amendment; (6) unlawful arrest of Plaintiffs in violation of the Fourth Amendment; (7) New York state tort law of malicious prosecution; (8) New York state tort law of abuse of criminal process; and (9) New York state tort law of false arrest.

## DISCUSSION

In deciding a motion to dismiss under Rule 12(b)(6), a district court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir.1999) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999) (*quoting Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995)). "In addition to the forgoing standard governing Rule 12(b)(6) motions, the Court must be mindful of the relevant rules of pleading. In general, a plaintiff need only provide 'a short and plain statement of the claim showing that the pleader is entitled to relief', Fed.R.Civ.P. 8(a)(2), and 'all pleadings shall be construed as to do substantial justice'. Fed.R.Civ.P. 8(f)." *Protter v. Nathan's Famous Sys., Inc.*, 904 F.Supp. 101, 105 (E.D.N.Y.1995).

██ Furthermore, in reviewing a case brought under 42 U.S.C. § 1983, the Court must be mindful that "[s]ection 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993), *cert. denied*, 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994). Thus, "[i]n order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law; and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Katzev v. Newman*, No. 96 CV 9138, 2000 WL 23229, *2 (S.D.N.Y. Jan. 12, 2000).

## 1. Equal Protection

██ Plaintiffs' first and second causes of action assert violation of their right to equal protection guaranteed by the United States and New York state constitutions respectively. Because the Court finds that a "rational basis" exists for Defendants' alleged disparate treatment of Plaintiffs, these causes of action are dismissed.

██ The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Article 1, section 11 of the New York State Constitution provides that "[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof." "The breadth of coverage under the equal protection clauses of the federal and state constitutions is equal." *Pinnacle Nursing Home v. Axel-*

*rod*, 928 F.2d 1306, 1317 (2d Cir.1991). Accordingly, the following analysis applies equally to Plaintiffs' first and second causes of action. *See Sanchez v. Turner*, No. 00 CV 1674, 2002 WL 1343754, *11 n. 13 (S.D.N.Y. June 19, 2002).

Plaintiffs claim that their right to equal protection has been violated because they, as representatives of a class of people who wish to enter Long Beach from the water, are treated differently from those people who enter Long Beach through the authorized land-based entrance.

 Where, as is the case here, the alleged unequal treatment implicates neither a "fundamental right" nor is based on a suspect or quasi-suspect distinction such as race, religion or alienage, the Court is directed to apply a "rational-basis review" to the government's action. *See Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993). Under a rational-basis review, a state's classification will survive as long as there is some rational relationship between the disparity of treatment and a legitimate governmental purpose. *Board of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 367, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (*quoting Heller*, 509 U.S. at 320, 113 S.Ct. 2637). "Moreover, the State need not articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.' " *Id.*

Plaintiffs have failed to meet their burden of negating any conceivable rational basis underlying the OPRHP's policy prohibiting entry of Long Beach from the water. *Id.; see also Gonzalez v. City of New York*, 135 F.Supp.2d 385, 391–92 (E.D.N.Y.2001) (rejecting equal protection claims because plaintiff's "evidence is insufficient to" negative every possible basis

that might support the government enactment); *Carbonell v. C.O. Acrish*, 154 F. Supp.2d 552, 562 (S.D.N.Y.2001) (same); *Decker v. City of Indianapolis*, No. 01 CV 1885, 2002 WL 1585622, *2 n. 3 (S.D.Ind. Jul.17, 2002) ("Plaintiffs must demonstrate that no reasonable basis exists to justify the policy, not simply refute the justification offered by the policymaker").

The OPRHP is statutorily authorized to "[i]dentify, protect, manage, and conserve important ecological and natural resources, including plants, animals and ecological communities that are rare in New York state, located on state parks." N.Y. Parks Rec. & Hist. Preserv. § 3.09(18) (McKinney Supp.2002). OPRHP is also specifically authorized to "regulate ... the operation, speed and mooring of boats in or upon any waters or waterways in the ... parks ... [including] any waters offshore from any bathing beach." N.Y. Parks Rec. & Hist. Preserv. § 13.13 (McKinney Supp.2002). It was pursuant to this authority, that the OPRHP issued the regulation prohibiting the operation of boats or water-craft within 1,000 feet of any bathing beach or surfing area. *See* N.Y. Comp.Codes R. & Regs. tit. 9, § 377.1(i).

Plaintiffs do not even attempt to dispute the possible justifications for the OPRHP's policy and regulation. Instead, Plaintiffs maintain, contrary to settled law, that it is not their burden to do so. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, p. 8. Plaintiffs' misunderstanding of their burden under the law in this respect is, however, of little moment, because it is clear that a rational basis does exist for the OPRHP's policy and regulation. The OPRHP is charged with protecting and regulating New York state's beaches. Clearly, concerns regarding the protection of beach-goers and swimmers, and protecting the integrity of the shoreline, justify the

OPRHP's ban on the operation of boats or water-craft within close proximity of the beach. These concerns likewise justify limiting and regulating the entrances by which visitors may access the beach. Therefore, even if Plaintiffs had attempted to satisfy their burden "to negative any reasonably conceivable state of facts that could provide a rational basis for the classification", they would have been unsuccessful in doing so.

Accordingly, the first and second causes of action are dismissed.

### 2. Free Speech

Plaintiffs' third cause of action asserts that Defendants violated their First Amendment right to free speech and protest. For the following reasons, this claim is also dismissed.

■ The crux of Plaintiffs' First Amendment claim is that their entry on the beach by water on September 4, 2000 was intended to convey a message of protest against the OPRHP's policy proscribing such entry. Accordingly, Plaintiffs allege that their arrest and attendant removal from the beach stifled their constitutionally protected speech.

Upon review of the parties' arguments, and the relevant case-law, the Court finds Plaintiffs' First Amendment claim to be without merit. It is not apparent to the Court that Plaintiffs' entry on the beach from the water constitutes "inherently expressive conduct." *See City of Erie v. Pap's A.M. t/d/b/a "Kandyland"*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). It is, however, unnecessary to reach this question because, assuming *arguendo* that Plaintiffs' conduct is entitled to First Amendment protection, for the reasons outlined below, the challenged regulation is still a valid government enactment.

■ Initially, the Court notes that the statutes implicated in Plaintiffs' arrest prohibit conduct only, without regard to any expressive content. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) ("the ordinance [unlike the classic censorship scheme] is not even directed to communicative activity as such, but rather to *all* activity conducted in a public park"). Neither the OPRHP regulation, nor the disorderly conduct statute, are aimed at curtailing speech. They are aimed at restricting certain conduct, and any resulting restriction of expression is merely incidental. Therefore, because the regulations are "unrelated to the suppression of expression," they need not satisfy the "demanding standard" used to judge the constitutionality of statutory restrictions "related to the content of expression." *City of Erie*, 529 U.S. at 289, 120 S.Ct. 1382.

Furthermore, to the extent that the OPRHP regulation does limit Plaintiffs' ability to "protest" on Long Beach, it is a reasonable "time, place or manner restriction." *Id.* ("the licensing scheme at issue here is not subject-matter censorship but content-neutral time, place, and manner regulation of the use of a public forum"); *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) ("the government may enforce reasonable time, place, and manner regulations as long as the restrictions 'are content-neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication.' ... We have regularly rejected the assertion that people who wish 'to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please' ").

Nothing in the OPRHP regulation would prevent Plaintiffs' from entering the beach through the authorized entrances and con-

veying their desired message. Nor are Plaintiffs prohibited from engaging in their "expressive conduct" of swimming and paddling ashore elsewhere, where such conduct is not prohibited. As such, substantial alternative avenues exist whereby Plaintiffs could deliver their speech, and thus, Plaintiffs' First Amendment right to free speech and protest have not been violated. *See Hill v. Colorado*, 530 U.S. 703, 726, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) ("when a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal"); *Carew–Reid v. Metropolitan Trans. Auth.*, 903 F.2d 914, 919 (2d Cir.1990) ("The First Amendment, however, does not guarantee appellees access to every or even the best channels or locations for their expression").

Accordingly, the third cause of action is also dismissed.

### 3. Substantive Due Process

Plaintiffs' fourth cause of action alleges that Defendants violated their constitutional right to substantive due process. For the following reasons, this cause of action is also legally insufficient.

■■■■■■ Plaintiffs' fourth cause of action merely rephrases their First Amendment free speech claim under the banner of "substantive due process." Plaintiffs assert that their right to substantive due process has been violated because "Defendants' conduct and actions were calculated to restrain the Plaintiffs' right to free speech by discouraging them under threat of continued punishment from making any further statements against the [OPRHP's] policy." *See* Complaint ¶ 67. It is well-established that "where another provision of the Constitution 'provides an explicit textual source of constitutional protection,'

a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process.'" *Conn v. Gabbert*, 526 U.S. 286, 293, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999).

Accordingly, Plaintiffs' claim based on restraint of speech "must be analyzed under the standard[s] appropriate to [the First Amendment], not under the rubric of substantive due process." *Kia v. McIntyre*, 235 F.3d 749, 757 (2d Cir.2000) (quotations omitted), *cert. denied,* —— U.S. ——, 122 S.Ct. 51, 151 L.Ed.2d 21 (2001). As is detailed above, Plaintiffs fail to state a viable claim for violation of their First Amendment right to free speech.

Accordingly, the fourth cause of action, sounding in substantive due process, is dismissed.

### 4. Procedural Due Process

■■■■ Plaintiffs' fifth cause of action asserts violation of their right to procedural due process. The Court finds that Plaintiffs have failed to identify a constitutionally protectable "property" or "liberty" interest that Defendants have interfered with. Thus, this cause of action is insufficient on its face.

The Supreme Court has directed that procedural due process claims are to be examined in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State . . .; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506(1989) (citations omitted).

Here, Plaintiffs fail to satisfy the first step of this analysis, because they have not identified a legitimate "liberty or property

interest which has been interfered with by the State." Plaintiffs assert that Defendants interfered with their "property interest" in that "Defendants' conduct and actions summarily denied Plaintiffs access to Long Beach without any notice and opportunity to be heard." *See* Complaint ¶ 72.

Plaintiffs have not cited, nor has the Court found, any authority for the proposition that Plaintiffs have a constitutionally protectable property interest in access to the Long Beach foreshore. *See generally Stutchin v. Town of Huntington,* 71 F.Supp.2d 76, 100 (E.D.N.Y.1999) ("The Second Circuit has adopted a strict 'entitlement' test to determine whether a party's interest in land-use regulation is protectable under the Fourteenth Amendment . . . In the land use context, the entitlement test is applied 'with considerable rigor', so that the federal courts will not become substitutes for the state courts in their review of local land use decisions"); *Devine v. Village of Port Jefferson,* 849 F.Supp. 185, 188–89 (E.D.N.Y.1994) ("It is also well settled that in order to determine whether a property interest exists, a court must look to state law . . . Because plaintiffs had no property interest in the three roads, they were not entitled to any notice or hearing before the Village took action").

To the extent that Plaintiffs seek to hitch their procedural due process claim to a theory that their "liberty" was infringed by the alleged abridgment of their free speech, this claim is also without merit. As is set forth above with respect to Plaintiffs' First Amendment claim, even to the extent that Long Beach can be considered a "public place" or "public forum", the government is not precluded from enforcing reasonable time, place and manner restrictions. *See International Caucus of Labor Committee v. Maryland Dep't of Trans., Motor Vehicle Admin.,* 745

F.Supp. 323, 330 (D.Md.1990) ("While plaintiffs have a recognized interest in the exercise of their First Amendment rights, this interest differs somewhat from a property or liberty interest because plaintiffs are free to engage in their speech activities in other areas . . . The type of deprivation involved here is therefore not as serious as an . . . outright taking of property").

Because Plaintiffs have not identified a constitutionally cognizable "liberty" or "property" interest that they have been deprived of, they fail to satisfy the first prong of a procedural due process analysis. Accordingly, the fifth cause of action is dismissed.

### 5. Fourth Amendment—Unlawful Arrest

Plaintiffs' sixth cause of action asserts that "Defendants individually and collectively violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution and Civil Rights Act of 1871, 42 U.S.C. Section 1983, by arresting and detaining Plaintiffs without probable cause." Complaint ¶ 14. The Court finds that there was probable cause for Plaintiffs' "seizure", and accordingly, this cause of action is dismissed.

### A. Seizure

The Fourth Amendment to the United States Constitution, provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." The first question that must be addressed in a Fourth Amendment analysis is whether there has been a "search" or "seizure." "In the classic formulation, a Fourth Amendment seizure occurs '[o]nly when the officer, by means of physical force or show of authori-

ty, has in some way restrained the liberty of a citizen.'" *Nieves v. McSweeney,* 241 F.3d 46, 55 (1st Cir.2001) (quoting *Terry v. Ohio,* 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

Although this is a close case, the Court finds that Plaintiffs were subject to a "seizure" under the Fourth Amendment. Plaintiffs claim that their liberty was restrained because "at the point when the Plaintiffs were informed that they were being issued a Summons" they "were not free to leave until the Plaintiffs had the Summons in hand." *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint, at. p. 16. Defendants argue, however, that Plaintiffs were not subject to a Fourth Amendment "seizure" because they were merely cited and issued an appearance ticket, but were never physically placed in custody.

The leading case in this circuit on the issue of what constitutes a "seizure" under the Fourth Amendment is *Murphy v. Lynn,* 118 F.3d 938 (2d Cir.1997), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998). The *Murphy* court held that where, attendant to pre-trial release, a defendant is prohibited from traveling outside of the state and is required to make several court appearances, "the imposition of [these] restrictive conditions of release constitutes a seizure within the meaning of the Fourth Amendment." *Id.* at 946.

*Murphy* does not, however, address the situation before this Court, where, although no restrictions are placed on a defendant's interstate travel, the defendant is issued an appearance ticket and required to appear in court. The district courts in this circuit that have analyzed *Murphy,* however, have held that the mere issuance of an appearance ticket, without any restraint on travel, is a sufficient re-

straint of liberty to constitute a "seizure" under the Fourth Amendment. *See e.g. Kirk v. Metropolitan Trans. Auth.,* No. 99 CV 3787, 2001 WL 258605, *15 (S.D.N.Y. Mar.14, 2001); *Kirton v. Hassel,* No. 96 CV 1371, 1998 WL 146701, *6 (E.D.N.Y. Mar. 25, 1998); *Sassower v. City of White Plains,* 992 F.Supp. 652, 656 (S.D.N.Y. 1998); *but see Britton v. Maloney,* 196 F.3d 24, 30 (1st Cir.1999) ("the fact that [the plaintiff] was given a date to appear in court is insufficient to establish a seizure"), *cert. denied,* 530 U.S. 1204, 120 S.Ct. 2198, 147 L.Ed.2d 234 (2000). We agree with these district court decisions, and hold that Plaintiffs satisfy the "seizure" requirement for their Fourth Amendment claim.

### B. Probable Cause

The next question before the Court is whether the challenged "seizure" is "unreasonable" under the Fourth Amendment. In this case, the question of reasonableness turns on whether there was probable cause for the police's issuance of the appearance tickets. *See Fulton v. Robinson,* 289 F.3d 188, 195 (2d Cir.2002) ("A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest").

 Plaintiffs claim that there was no probable cause because the disorderly conduct statute that Plaintiffs' were cited for violating is unconstitutionally vague and broad.

Initially, the Court does not find that the statute that Plaintiffs were cited for violating is unconstitutionally vague or broad. The statute provides, in pertinent part:

The activities and uses enumerated in this section shall be absolutely prohibited on property under the jurisdiction, custody and control of the office.

(f) Disorderly conduct. No person shall do any of the following:

(1) disobey a lawful order of any officer or employee of the office or the directions of any sign erected by or at the direction of the office.

N.Y. Comp.Codes R. & Regs. tit. 9, § 375.1(f)(1).

■■■ The Supreme Court has held that, in analyzing whether a statute is impermissibly vague or broad, courts are to be guided by the "underlying principle ... that no man shall be held criminally responsible for conduct which he could not reasonably understand to be prescribed." *Colten v. Commonwealth of Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972) (quoting *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954)). In addition, statutes are "judged on an as applied basis, one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness ... [even though] ... the statute could be read to extend to innocent, unoffending conduct." *Betancourt v. Giuliani,* No. 97 CV 6748, 2000 WL 1877071, **3–4 (S.D.N.Y. Dec.26, 2000).

Applying these standards, § 375.1(F)(1) is not vague as applied to Plaintiffs' conduct. It is not disputed that the police officers ordered Plaintiffs to leave the beach because Plaintiffs had not entered the beach from the authorized land-based entrance, and that Plaintiffs disobeyed this lawful order. The Plaintiffs were issued an appearance ticket only after they "disobey[ed]" the officers' "lawful order" that they exit the beach. Under these circumstances, a person of reasonable intelligence would have understood Plaintiffs' conduct to be proscribed by the statute.

■■■ Further, even if the Court were to find that § 375.1(F)(1) is unconsti-

tutionally vague, such a finding would not negate the existence of probable cause for the issuance of the appearance tickets, because the police officers believed Plaintiffs to be in violation of a "presumptively valid" statute. *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979); *United States v. Inocencio,* 40 F.3d 716, 728 (5th Cir.1994). The Supreme Court has "repeatedly explained that 'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." *Michigan,* 443 U.S. at 37, 99 S.Ct. 2627. Accordingly, a police officer does not "lack[] probable cause to believe that the conduct he observed and the words spoken constituted a violation of law simply because he should have known that the ordinance was invalid and would be declared unconstitutional." *Id.*

Because the Court finds that probable cause existed for the issuance of the appearance tickets, the seizure was not "unreasonable" under the Fourth Amendment. Accordingly, the sixth cause of action is dismissed.

### 6. Tort Law Claims

Plaintiffs' seventh, eighth and ninth causes of action are for violation of New York state tort law. Having dismissed all of the causes of action over which it has original jurisdiction, at this early stage in the litigation, the Court declines to exercise supplemental jurisdiction over these state law claims. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725–28, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Complaint is GRANTED.

The Clerk of the Court is directed to close this case.

SO ORDERED.